Alrighty, next case is Jessup v. Continental Motors. Good morning. Good morning. May it please the Court, my name is Leigh Woodruff. Will you be reserving any time for rebuttal? I will, three minutes please. Okay, that's granted. I'm Leigh Woodruff and I'm appearing for appellants, Continental Motors Inc., Teledyne Technologies Incorporated, TDY Industries LLC, and Allegheny Technologies Incorporated. This appeal, Your Honors, presents an opportunity to help clarify a confounding creature of judicial creation known as the derivative jurisdiction doctrine. As this Court has recognized, the doctrine is improvidently named in that it includes the word jurisdiction, which the Supreme Court itself has called a word of many, too many meanings. Here, the core question is whether the so-called derivative jurisdiction doctrine is really a matter of subject matter jurisdiction or rather a matter of procedure. Well, maybe you're assuming something. Could you just clarify, are you arguing that the derivative jurisdiction doctrine does not apply to Section 1442? I am not, Your Honor. Okay, fine. Okay, after recent amendments, it is clear that Congress limited its abrogation of the doctrine to the general removal statute. All righty, thank you. Okay. To me, the answer to the question concerning the procedural versus subject matter jurisdiction issue can be found in this Court 3, Exchange Bank v. Track Wise decision of 1995, where this Court answered a similar question. There, the Court held that the forum defendant rule, 28 U.S.C. 1441b, is not jurisdictional but rather a procedural defect and that it thus can be waived. The opinion cited three Supreme Court cases, Baggs v. Martin, McKay v. Uinta, and Grubbs v. G. Credit Corp., all of which were removed pursuant to petitions that did not allege proper grounds for federal subject matter jurisdiction. For example, in McKay, the defendant removed based on diversity, but the amount in controversy was only satisfied in the defendant's counterclaim later filed in federal court. Nonetheless, the Supreme Court concluded that there was no jurisdictional defect because removal proceedings are in the nature of process to bring the parties before the court. Similarly, in Grubbs, the Supreme Court held the relevant issue is not whether the case was properly removed, but whether the federal court would have had jurisdiction of the case had it been filed in that federal court. Let me ask you a question. If we affirm, aren't you going to be able to vindicate your rights in a federal forum anyway? Well, Your Honor, there's two scenarios that will play out. In either case, we will seek in trial court, if the remand stands, to amend and add the individual forestry employees as plaintiffs, in which case the government If you do, you're back. Well, the government will again, you know, substitute in and the case will be removed. Okay, and there we will be again. The danger, and I think this is why this appeals before the court, is that the trial court could not grant leave to amend, in which case the claims against the government will be unjustly excluded from this litigation. And here, remember, we have two other decedents from the plain crash, and those cases are currently pending and in discovery in the Eastern District of Pennsylvania. The only reason this case is not is because it was filed first, and my clients did not have the identities of the individual forestry employees, so they sued the service. Okay, and so that was the little tweak in the procedure that resulted in this whole rigmarole that we're now dealing with. Okay, I don't think that that sort of procedural defect should preclude claims that the federal government has submitted to under the Federal Tort Claims Act. I'm trying to follow this all the way through, though. I mean, you've got the federal government in the other cases, right? Correct. And it's the same accident. It is. And so whatever outcome of that case will be res judicata, would it not be with respect to whether the federal government has liability? I mean, the fact that you can't bring them in now as a third-party defendant wouldn't preclude a claim for indemnification or contribution later. If you couldn't, if you went back to the trial court, state trial court, and they didn't let you amend. That is correct, Your Honor. Of course, it would be very inefficient to go that route. Okay. Well, I don't see the inefficiency, because the federal government's already in the litigation. In the other two cases? Yes. Yeah. Well, all of the cases should be tried together. All right. Okay. They should be tried together. So is your argument that – No, no. But is your argument that – I mean, it seems that it's kind of premised on the Rodas Seventh Circuit case. Correct. If we go that way, I mean, it seems to be factually distinct from this case where the defect, procedural defect of any, was not waived. It was raised at the first possible time. How do you deal with that? I'm sorry. The defect was raised at the first possible time? Right. I mean, in Rodas, it wasn't. Yeah. I mean, that's how it's factually distinct. Well, here, I don't know that it was raised at the first possible time. I mean, I think we need to really look at this jurisdictional versus procedural issue. Here, the first time it was raised by motion, okay, was when the plaintiffs moved to dismiss. Okay? And they raised it. If it's really a matter of subject matter jurisdiction, the court should have granted that motion. Okay? It's something else. It's procedural. It doesn't matter who raises the question of subject matter jurisdiction. If there's not jurisdiction, there's not jurisdiction. But the court said, no, the wrong party raised it. This tells us, okay, that it's a matter of procedure, went back down, and comes back up. It has to be raised within 30 days following removal. Here, the government answered the complaint in federal court. Okay? And then almost three months went by before, after it got the cue from the trial court's decision on the motion to dismiss, then it finally filed a motion to dismiss, and the court found no subject matter jurisdiction. What the court was really finding was that there was no removal jurisdiction, which is one of these strange uses of the word jurisdiction. But under Rodas, okay, and under Calhoun, an unpublished opinion from this court, and also, I think, Korea Exchange, that is a procedural issue. Okay? And it is waivable. So you're saying in this case the procedural defect was waived because it was raised too late? It was raised too late, yes, by the United States, who had the right to raise that procedural issue. But, again, had it really been a matter of subject matter jurisdiction, it would have been fine that the plaintiffs had raised it. So if you assume for a moment, as was suggested by Judge Geras' question, that there's a distinction between this case and Rodas, you're asking us to take another look at what seems to be a 90-year-old precedent with regard to this doctrine, as well as what Congress did in 2011, and look at both of those things and say, you know what, we are going to go another way. I mean, that seems antithetical to sort of what we should be doing. Tell me why it's compelled here, particularly given your response to Judge Van Aske's question, that you still have the federal government in play, so to speak. Well, I think there's really a need in the case law here in many of the circuits, including the Third Circuit, to clarify this derivative jurisdiction doctrine. Otherwise, it is going to continue to generate this kind of unnecessary litigation. Can we as a panel make that decision, or doesn't this have to be decided by the court en banc? I think you can issue a decision from the panel. The key point is that subject matter jurisdiction concerns the power of the court to hear a case. That's what we're talking about. In Rodas, the court held that the derivative jurisdiction is rooted in the idea that there is no case at all. So I'm not saying that there's never going to be a situation where 1442 removal is not going to be challenged properly on a motion to dismiss. One circumstance when that dismissal might be appropriate is when there's a state court subpoena served on a federal officer, such as the N. Ray Elko case from Ninth Circuit, 1997. In that case, a state grand jury issued a subpoena to a Forestry Service employee, as it happens. After the service instructed the employee not to appear pursuant to its TUI regulations, the grand jury issued a subpoena again, and the service removed under 1442. The district court quashed that subpoena, and on appeal, the court of appeals stated that its jurisdiction was derivative in a limited sense under Lambert Run, which is the older decision that you're referencing. Since the state court lacked jurisdiction to issue the subpoena, we must dismiss on that ground. But again, the issue was there was no case at all underneath. Okay, that's, I think, what this derivative jurisdiction doctrine is really saying. That's what Rodas is saying. Okay? That's the difference. So, in closing, I want to describe the two scenarios that could follow unless the district court's decision is reversed. But before I do that, I just want to say the U.S. is not being deprived of any rights here. It should be noted that finding the derivative jurisdiction to be procedural is not going to deprive them of any rights. The U.S. always had the right to move to dismiss in the state court for lack of subject matter jurisdiction. It didn't do that. It chose to use this fluky procedure here. Instead, the government chose to do this, and it was almost three months later that they sought dismissal after their removal. By making that choice, the U.S. itself submitted to subject matter jurisdiction. What's fluky? The federal government being sued in state court? They're always going to remove. I mean, what's fluky from your perspective I know is going to federal court and then invoking the doctrine. But, I mean, that's always going to happen. It's the remand for dismissal only, Your Honor. That is very, very strange in my opinion. It doesn't make any sense, and it's been commented time and again that that does not make any sense. The only circumstance that I've identified here today where I think it is potentially useful is in that subpoena circumstance. But as a matter of policy and fairness, it makes no sense to allow the government to submit to federal subject matter jurisdiction only to turn around and say that there is none. So the best case scenario here is that the amendment will be granted in state court. The government will once again substitute in and then once again remove to the Eastern District. If that happens, all of the resources expended on the current appeal and underlying motion will have been utterly wasted. And as I said, I think there is a danger of future litigations going this route. The worst case scenario, the state court will deny appellant's motion to amend and the denial would have the absurd and unjust result of allowing this case to proceed in state court without the United States while the companion Snyder and Whiteman cases are proceeding in federal court. And, you know, timing issues. It's possible that we could have a race judicata situation down the road. We're not sure. So such a scenario would present significant potential for inconsistent results and, of course, some duplication of efforts. And it's completely unwarranted given that the U.S. did waive the procedural removal defect known as the derivative jurisdiction doctrine by failing to move on that basis within 30 days. Okay. Thank you, Cass. We'll hear you on rebuttal. Thank you. Can I just ask one more question? Yes or no? Sure. Just one last question. You're in the party you represent, you're in both suits, right? You're in the other suit? We're in all three, yes. So I represent the manufacturer of the engine. Okay. Thank you. Thanks. Thanks. Good morning, Your Honors. Adam Jett for the government. May it please the court. Appellant filed a third-party complaint against the United States in a state court, and it's common ground amongst all of the parties in the suit that that suit was barred by sovereign immunity and that it would have properly been dismissed in the state court had the United States so moved there. Instead, the United States removed and exercised its right to have a federal court hear its defense, which, again, is the well-established purpose of 1442. And in so doing, the United States did not either somehow cure the mistake of having filed the suit in state court or, as it seems like the appellants are now arguing, somehow transmogrify that defense from some sort of a jurisdictional defense into a waivable defense. And before I get into the discussion of whether, in fact, what has been referred to as the derivative jurisdiction doctrine is actually jurisdictional, I do just want to make two brief observations that I think might be helpful to the court in thinking about this. The first is just to be clear, as I think we've spelled out in our brief, it's not actually necessary for the purposes of resolving this appeal to decide whether the derivative jurisdiction doctrine is jurisdictional. And I'll get back to that in just a moment. I just want to make the other observation, which is that I think that a lot of the discussion in the appellants' briefs gets a little bit confused because my friend is really just mixing up two entirely different doctrines. The question of derivative jurisdiction is a question of once you've removed and gotten to federal court, what jurisdiction has been conferred on that federal court? A lot of the cases that my friend talks about, the Korea Bank case, for example, that she was just discussing when she was up here, are actually just questions about how removal works, sort of the circumstances under which you can challenge removal. And I want to be very clear. The United States removed this case from state court to federal court under 1442. We are not here arguing that our own removal was a mistake or that the federal court should have somehow remanded our own attempt to bring this up to federal court. So a lot of the cases that she's talking about are really just about an unrelated area of law and sort of a lot of errant language has basically been covered. Let's go to point one because it's a question that I had. Absolutely. And I get, you know, we don't decide things we don't have to decide. Is it necessary for us to decide whether it's procedural, jurisdictional, based on the fact that you removed it quickly? It's not at all, and I'm happy to spell that out. My understanding is that the import of whether this is jurisdictional or non-jurisdictional, other than the appellant's argument, appellant has sort of a bunch of language where they basically say, well, it's not jurisdictional, therefore the court can just ignore it. And, of course, the court is well aware, even if you have a non-jurisdictional procedural rule, the court can't just ignore it because, you know, it wants to. So the only two real imports of it are the waiver argument they make and then an argument with respect to the amended complaint. Let me just start with the waiver argument because that's really where I think the bulk of their time. She says you waived it. Too late. We did not. Before I explain why we didn't waive it, I actually just want to point out that the waiver argument that they're making is not only waived, but actually doubly waived. First of all, appellant's waiver. The only thing that's left is triple waived. Appellant's waiver argument, first of all, was never raised in district court. The United States both raised the derivative jurisdiction issue in its answer and then in its later motion to dismiss. If your honors look at Joint Appendix pages 416 to 427, that's the response that the appellants made. There they made a lot of the same arguments that they made here in their opening brief where they say, well, this isn't a real doctrine. We think it's a bad idea as a matter of policy. It seems inconvenient. But in none of those did it ever say that the argument was waived. And, of course, that's particularly prejudicial because as the court is aware, of course, if they had said to the district court that it was waived, then the district court would potentially have been able to forgive the waiver. But then I think that the appellants also didn't make the waiver argument in their opening brief. I really saw it for the first time in their reply brief. Their opening brief has some language about whether it's jurisdictional or non-jurisdictional, but they're using that to make a different argument. So in my view, the waiver argument is not only singly waived but actually doubly waived. But let me actually explain why it is that the United States did not waive the derivative jurisdiction argument. The very first thing that the United States filed after it removed the federal court, it was days after the removal, was its answer. And if you look at Joint Appendix page 112, there the United States spells out a number of defenses that it intends to raise. And one of those defenses is this defense, the derivative jurisdiction defense. We explain there that it's a- Give us an idea temporarily. Once it was removed, give us an idea of the timing because that may be important. The United States filed its answer on August 13, 2012. I believe that was either five or seven days after the case got to federal court. So it was the very first thing that the United States filed. And I just want to point out, again, this is all coming up for the first time in the reply brief. But in the reply brief, they spell out or at least kind of point to, I think, a couple of maybe theories of waiver. So I could just address each of those in turn. Again, I apologize we weren't able to do this in our brief because this did come up for the first time in the reply brief. Their main argument, and this is spelled out in the reply brief pages six to eight, is they say that a motion to dismiss has to be made before pleading. And they cite Rule 12B. If Your Honors look to Rule 12H, Rule 12H covers waiver. And then the question then is just what sort of an argument is the derivative jurisdiction argument? Of course, in our view, it is an argument about subject matter jurisdiction, which 12H3, of course, makes clear. That can be raised at any time. But it somehow, having gone from state court to federal court, somehow transmogrifies this from a jurisdictional defense into some other kind of affirmative defense, which is, I think, what appellants must be saying, although they never quite explain how it is that that transformation occurred. That kind of affirmative defense, which would be a 12B6 defense, can also be put in the answer. And at that point, if Your Honors look to 12H2, it explains that that sort of defense then would just be raised as a motion on the pleading, so long as it's already been in the answer. And it is in the answer. So at the very most, even if they were right, that somehow this had been turned from a jurisdictional defense into some other sort of affirmative defense that also was one that needed to have been raised. It was raised in the answer. And then it just means that the motion to dismiss should have been understood as a motion for decision on the pleadings, which, of course, courts do every day. So in any event, this wouldn't be waived. The only other theories that they point to is on pages 6 and 8 of the reply brief. They say that the motion to dismiss was untimely because some sort of a 21-day deadline had passed. If Your Honors actually look at the rule that they're citing, it says that you have 21 days to file your responsive pleading, and the United States filed this answer. It's responsive pleading and well under that time. And then my friend just cites a number of excerpts from this court's Nelson decision. That Nelson decision is actually about raising defects in removal, that if a defendant removes a case and a plaintiff kind of continues to litigate the case and doesn't ask to have it remand, that they basically consented to the removal. Again, the United States removed this case. We are not challenging our own removal here. So, you know, their waiver argument is both doubly waived and simply incorrect. The only other import of the jurisdictional argument that my friend makes, perhaps, is I think at times she suggests that it may be relevant to the question whether the district court should have accepted their amended pleading. Now, again, as far as we're concerned, as I think this court spelled that in Staples, because there was no jurisdiction over the case at all, the district court would not have even been empowered to have accepted the amended pleading. But even sort of ignoring the question of jurisdiction, I mean, ultimately, the question then is just whether after the U.S. removed and obtained dismissal, because, again, if we're right on the waiver issue, then the U.S. was correctly dismissed, then whether the district court abused its discretion in not letting the manufacturers add a new private defendant. And there are two reasons that the district court did not abuse its discretion that are entirely independent of the jurisdictional, non-jurisdictional line. One of them is, I think, the reason that actually the district court spelled out. It pointed to this court's USX decision, and it said that when a case is removed, it can only stay there on the basis on which it has been removed. And once the United States is dismissed and out of the case, then obviously 1442 is no longer a basis for holding on to the case. So it just goes away. My friends only point to an out-of-circuit case, a Ninth Circuit decision called Costco, which one, as the district court pointed out, basically every other circuit has gone the other way. And even the Ninth Circuit's Costco decision is factually quite different. And I would encourage the court to read it. Essentially what happened there is once the case had proceeded for quite a long time, there was a change. I believe it was a change in the complaint, which meant that there was no longer a federal question, but the complaint on its face expressly spelled out that the parties were also diverse. And so the Court of Appeals just said that it could hold on to the case. But finally, we also offer in our brief an independent ground for why it is that the court didn't have to hear the amended complaint, which is the amended complaint itself presented no grounds for jurisdiction. The amended complaint filed a state tort lawsuit against two individuals. And the only response that my friends make is they say, well, we all kind of know that eventually the United States was probably going to substitute in and then bring it back up here, and then it would have turned into an FTCA suit. But nonetheless, the complaint, I mean, as filed, presented no federal question, and so there would not have been jurisdiction. Can you respond to your friend's argument about judicial economy? I mentioned that if we did affirm, she'd still be able to vindicate her rights in a federal forum, and she seemed to think that judicial economy wouldn't be upheld, so to speak, if we did that. Won't you comment on that? Of course. I think there are kind of three responses to that concern. The first is I should just note that the question of derivative jurisdiction is one that comes up in a number of different contexts, not just when you have an FTCA suit against the United States. And so it may be true, and I'll kind of circle back and explain this, but it may be true that in this particular case, because of what is basically a little corner of the Federal Tort Claims Act, the Westfall Act, which was a late added amendment, basically meant to sort of patch a hole created by a Supreme Court decision. It may be that this would go back down to state court and then ultimately come back up to federal court, but I do just want to point out that obviously, you know, the tail can't wag the dog. The fact that that might end up happening because of a particular eccentricity of the Federal Tort Claims Act can't dictate the interpretation of the derivative jurisdiction doctrine. What if, as your adversary points out, your friend points out, in state court, they don't allow an amendment of the complaint? So I don't think that would be a particular practical problem for them. And the reason is that they could proceed as people normally proceed if the United States has tort liability towards you, which is they can just file a normal Federal Tort Claims Act case in a federal court against the United States. And I should point out, as far as I know, and this hasn't been discussed in the briefs, but as far as I know, there's not even a limitations clock that's ticking, because my understanding is their theory is one for contribution. And remember that there's not even yet any liability against them. So this is all irrelevant if they win their suit, which I'm guessing they probably are going to argue here that they would win their suit. It's only if they lose their tort suit, then at that point would accrue a contribution claim, and they could then bring that against the United States under the Federal Tort Claims Act, you know, obviously subject, of course, to, you know, the other defenses that the United States may raise, in much the same way that anyone else can. And finally, I should add, Judge Greenaway, that even if there ends up being this, what might be described as a sort of weirdness that this could go down to state court and then come back up to federal court, one, it is obviously just true that when Congress sets up rules for the way that courts operate and lawsuits proceed, that sometimes on the margins of those rules, you can end up with circumstances that seem a little bit, I think the word my friend was using, is weird. And here it actually seems like Congress, I mean, quite intentionally has retained this rule and had good reasons to do so. I mean, in 2011, Congress expressly decided that it was going to change this rule with respect to 1441 and keep it with respect to 1442. We spell out a number of potential policy reasons. One of them actually addresses the Westfall Act concern that Your Honor specifically has, which is notice, right, which is that under the Westfall Act, even though a complaint hasn't been served on the Attorney General, before the U.S. can substitute the actual named individual defendants, then have to notify the Attorney General and there has to be a proper process that occurs there. And, of course, there's the – You've got to wrap up, counsel. I'm sorry, Your Honor. And, of course, there's the other concern that may very well be what's going on in this case that Congress spelled out, which is simply that the plaintiffs never tried to sue anyone connected to the United States until, I'm sorry, the third party plaintiffs,  Thank you, Your Honors. Thank you, counsel. Thank you. Actually, I think we're going to hear from Ms. Jessup's attorney. May it please the Court. My name is Cynthia Devers from the Walk Law Firm on behalf of Plaintiff Below, Lise Jessup. I'm going to pick up where my colleague left off with respect to the purpose of what happened here. The reason that there are three separate – or two separate tracks, two lawsuits that are in federal court right now, and this lawsuit that's before this court right now, is because Taladine chose to take different approaches for the respective cases. In the Snyder and Whiteman cases, there were allegations of a diversity jurisdiction. They challenged plaintiff's allegation that Taladine had a Pennsylvania defendant, which invoked the forum defendant rule, which they did not argue in the Jessup case. So that's part of the reason that we're on two different tracks, because of different approaches that Taladine opted to take. Plaintiffs filed their amended complaint. But the government's in both of those lawsuits, right? Yes, Your Honor. Okay. What court do you want to be in? I would like to be in a court where we chose to file initially, which is in the state court. State court, yeah. And just to address my colleague's statement that it doesn't make sense just to send a case back down to state court, only to find its way back up to federal court, I would like to just point out the U.S.'s briefs, pages 17 and 18, which discusses the purpose of preserving the derivative jurisdiction doctrine for 1442 removal, which is to prevent claims against federal employees creates federal jurisdiction, and to prevent the fabrication of federal jurisdiction where there should be none, and increasing lawsuits against the U.S. Okay. Your Honor, my time is flying by. Do you have any questions that I can answer for you? No. Thank you. Your Honor, if I may just address one other issue while I have a minute left. The question of whether the derivative jurisdiction doctrine is procedural or jurisdictional was actually just recently addressed in a 2012 opinion in the Fourth Circuit called Bullock v. Napolitano. It's 666 F3 281. Sorry, what's the citation? It's Bullock v. Napolitano. Okay. It's 666 F3 281. It's the Fourth Circuit. It was decided in January 2012. Is that your brief? This is not. Okay. On page 284 of the opinion, it discusses the United States v. Sherwood opinion of the United States Supreme Court that discusses sovereign immunity being a jurisdictional requirement to meet the FTCA statutory requirements to bring a case, and it requires you to bring a case in federal court, not state court. And under the guidance of the United States v. Sherwood, the Fourth Circuit ultimately dismissed the case against the United States under the derivative jurisdiction doctrine as well. I see my time is up. Thank you very much. Your Honors, I just want to start by addressing the double or triple waiver argument that was made by my friend. I think we should, like, invoke a rule. Everybody should call each other friends. I like that. It's like in my daughter's preschool program. So he is accurate that the waiver word was not necessarily thrown about in earlier briefing in this case. However, it's the same issue was raised because we had argued from the time of the motion, Calhoun and Korea Exchange, and the fact of the procedural v. jurisdictional distinction, okay, which leads the court to the conclusion. We're not going to be excited by Calhoun. I mean, you know that, right? Institutionally, we can't be excited. I understand. You're right. It's an NPO. I think that that's why I start with Korea Exchange, okay, because it is looking at the removal statute, which we're also looking at here, okay, and it's finding that the forum defendant rule, okay, which is in the removal statute like the federal officer removal statute, is a defect in removal procedure, not in subject matter jurisdiction. Turning now to the question of having raised the derivative jurisdiction doctrine in the affirmative defenses, I would like to direct the court's attention to the Lopez case from the Western District of Texas. That case is currently on appeal, but the court's first decision in that case really provided a good outline of the arguments that we're presenting here. The policy reasons, judicial economy, that kind of thing that warrant looking at this procedural versus jurisdiction issue and settling it once and for all. In that case, it was a very similar procedural situation. There was an answer, and then there was a motion to dismiss. The court granted the motion to dismiss only because the government immediately upon removal moved to remand and noted that that 30-day requirement does apply. You say Lopez is on appeal to the Fifth Circuit, I guess.  Okay, so a similar issue is now pending before the Fifth Circuit, and I guess you should be aware of that. It's been fully briefed. I'm not sure if they're going to have oral argument. I also want to say that the parties are diverse. There is diversity jurisdiction in this case, and the case law has said that the court can retain jurisdiction on any basis once it's before the court, and that does provide the court with an alternative here. Is there original diversity of jurisdiction? Yes, there is. Why didn't you remove it? We did remove it, but we were remanded based on the forum defendant rule, which no longer applies. Okay. Okay? And then just the notice issue, if I could quickly say the Attorney General was served in this case. Okay? Okay. So that's not an issue. Thank you, Your Honor. Thank you, counsel. Thank you for the excellent argument, excellent briefing by all the parties, and we'll take the case.